5    91
4   121
12* 847
7* 493

5    91
13   350

5    91
23   315

WILLIAM BURROWS, Respondent v. EDWARD F. M. GUEST, Appellant.

HIGHWAY, DEDICATION OF— HOW SHOWN BY USER.—The extent of the dedication is determined by all the circumstances, not only by the part actually used, but also the width of highways in the vicinity and of the system of which the particular highway is a part.

ID—QUESTION FOR JURY.—Where the owner of the fee obtained title by a deed conveying half of the strip claimed to be a highway as one-half of a four rod street, and no portion of said strip platted as a four rod street, had ever been used as a road except a strip in the center of the platted street about two rods wide, and the remainder of the one-half of the platted street had been in the uninterupted possession of the owner of the fee, for more than eight years prior to institution of suit, and had by him been improved and cultivated, *held*, that extent of the dedication was a question for the jury to be determined from all the circumstances.

APPEAL from a judgment of the District Court of the Third District and from an order refusing a new trial. The opinion states the facts.

*Mr. Zera Snow (Mr. Z. Snow* was with him on the brief) for appellant:

There is no statute prescribing the method of dedications to public uses, and the common law rule must be resorted to. By this rule no particular form of dedication or acceptance is necessary. A dedication does not rest upon prescription or supposed grant. It is solely a question of intention to dedicate, followed by acceptance. These facts may be proved by any acts or words of the owner manifesting this intention on his part, or by acts of the public manifesting the intention of acceptance; public user, expenditure of public moneys are evidences of dedication and acceptance, and the sixth instruction should have been given: Angell on Highways p. 112 Sec. 142; *Gould* v. *Glass*, 19 Bar., 179; *Cincinnati* v. *White's Lessees*, 6 Peters, 436-7-8-9, 440; *Hunter* v. *Trustees*, 6 Hill, 407; 3 Kent, 450, 6 Ohio, 303; *Curls* v. *Hoyt*, 19 Conn., 154; *Hobbs* v. *Lowell*;

19 Pick., 405; *Barclay* v. *Howells Lessee,* 6 Peters, 499; 2 Dillon Mu. Cor., 2nd Ed., Secs. 500, 505.

No questions of fact were withdrawn from the jury by these instructions. In each and all of them the question of dedication and acceptance were directly referred to them, but defendant simply asked that in arriving at the facts the jury should be guided by certain legal rules. They could have been refused only on the theory that the case did not warrant them, because there had only been an actual user of about three rods in width of the road.

This the court had no right to assume. There must always be parts of a public road dedicated which may never be actually used, and still the whole be a public highway. The user of the whole had never become necessary, and it was a question for the jury to determine if there had been an acceptance of the whole, with a user which should enlarge with the increase of population and the necessities of the traveling public, particularly as there had been, as we claim, a dedication in law by virtue of the Eddins' deed to plaintiff of a road four rods in width. Defendant was entitled to the seventh instruction: *Sprague* v. *White,* 17 Pick., 307; *Hannum* v. *Belchertown,* 19 Pick., 311; *Mt. Vernon* v. *Lawrence,* 35 Me., 100; Angell on Highways, Sec, 155, p. 132; *Rex* v. *Wright,* 23 Com. L. 159.

The fact that plaintiff had trees, shrubbery, grass, etc., on that part of the surveyed road which had not been used ought not necessarily to negative conclusively the fact of a way over that part of the street, because (in county highways at least) the owner of a fee subject to public easement of that kind had always such rights, and plaintiff was exercising no greater right than every owner of the fee of a public highway could claim.

*Messrs. Baskin & Van Horne* for respondent:

Intent is the first requisite of a dedication. The court properly refused the sixth instruction asked by appellant. The evidence showed without conflict, that plaintiff had been for more than eight years in undisturbed possession of a part of the property in dispute, cultivating, farming .

and exercising exclusive control over the same. Such a possession conclusively negatives any intent of plaintiff to dedicate the same to public use as a highway: Angell no Highways, Sec. 152, p. 127.

The fee to the land in dispute is shown by the evidence to be in plaintiff. The owner of the land is, in contemplation of law, in possession of the highway running through the land: *Cortelyou* v. *Van Brundt*, 2 Johns., 356; *Gidney* v. *East*, 12 Wend., 98; Matter of Seventeenth Street, 1 Wend., 262.

HENDERSON, J.:

The complaint in this case alleges a trespass *quare clausum*, and describes the close as a strip of land forty-six rods east and west, by four rods north and south, and being the land between lot 10, block 40, and lot 1, block 33, of Ten-acre plat, Big Field survey, Salt Lake County, Utah Territory; and complains that the defendant entered thereon, and dug up, cut down, and destroyed fruit and shade trees and fruit-bearing bushes thereon growing, to the plaintiff's damage, etc.

The defendant answered to this complaint that the premises, and all thereof, were, at the time of the alleged trespass, a highway, and were situated in road district No. 4, Salt Lake county; that the defendant was road supervisor for said district; and that, in committing the acts complained of, he acted under the direction and order of the county court as such supervisor.

The cause was tried before a jury, and on the trial the plaintiff put in evidence a patent from the United States to John Eddins, dated June 5, 1871, conveying the lands in question, with other lands, by government subdivision, and a deed from Eddins to himself, dated April 24, 1876, conveying the lands in question and other lands by the following description: "All of lots 1 and 16, in block 40, Ten-acre plat, Big Field survey, together with one-half of the adjacent streets, containing in all 21.48 acres, more or less; also that eastern portion of lot 2, block, plat, and survey aforesaid, together with one-half of the adjacent street, containing in all ninety-two hundredths (.92) acres, more

or less, and all that south half of the eastern portion of lot three (3), block, plat, and survey aforesaid, containing forty-three hundredths (.43) acres, more or less; also that northern portion of lot ten (10), in block thirty-three (33), plat and survey aforesaid, together with one-half of the adjacent streets, containing in all eight and fifty-two hundredths (8.52) acres, more or less, which is included within the limits of lots three (3) and four (4) of section nineteen (19), township one (1) south, of range (1) east, Salt Lake meridian."

And the plaintiff testified in his own behalf as follows: "The land described in the complaint is not a part of lots 1, 16, or 3, of block 40, or lot 10 of block 33, referred to in my deed from Eddins. It is a narrow strip, referred to in my deed as a street. It lays between lot 1 of block 40 and lot 10 of block 33. It is what defendant claims as a street. It opens in the State road, and runs west to the Church farm. This strip is four rods wide. The land mentioned in my deed is a part of this Ten-acre plat, Big Field survey, spoken of. The 4 by 46 rods described in the complaint is the street in controversy. The trespass by defendant, Guest, was committed on this street. There is a water ditch running west along the south side of this strip. It is about a rod north of the south line of this strip in controversy. Defendant, Guest, is road supervisor of the road-district in which this land is situate. He came to me at the time mentioned in the complaint, and said he had been ordered by the county court of Salt Lake county to widen out this street to its full width. I objected, and forbid him and his men from doing it. I had a great many trees growing on the south side of this street, between the water ditch and the south line of the street. I planted them there. They have been growing for a good many years. They were fruit trees, plum and currant bushes, locust and mulberry trees. That is how I have been in possession of this street. Defendant, Guest, cut out those trees, and dug up the dirt, and put it to the centre of the street. It was in widening this street, as supervisor, that defendant committed this trespass. It is because of this that I brought this suit. I have no

improvements on this street north of the water ditch. My house and barn are across the north line on lot 1. This strip, 4 by 46 rods, described in the complaint, is laid out in the Ten-acre plat, Big Field survey, as a street, but it has never been used by the public generally as a road. The north part of it, about three rods in width, has been traveled over, and used by various persons in that vicinity owning land west of me. It has been traveled over by them on foot, by horses, and with wagon. It has been used principally by people in that vicinity to haul hay over it in the summer time. This street was turnpiked by the county in 1873; that is, the three rods in width on the north side of it was."

The defendant gave evidence tending to show that the survey and plat mentioned in the deed from Eddins to plaintiff was made as early as 1849, and that the plat was filed in the offices of the surveyor general of Utah, and of the county recorder of Salt Lake county, over 30 years prior to the alleged trespass, and had been generally acted upon and received as correct during all that time, and offered the same in evidence as showing the location and width of streets; but it was rejected by the court, because it was not shown to have been made by authority of the government; but that part of the plat and survey showing the particular land in question was admitted in evidence, from which it appeared that the land in question was surveyed, and platted as a street running east and west between lots 1, block 40, and 10 of block 33, and continuing on, past said lots, both east and west, to other intersecting streets.

One Brockbank testified, among other things, as follows: "Poll taxes have been worked out on that road since 1871. The true width was four rods. It was turnpiked in 1873, on the north side, and that was the portion of the road mostly used. In early days it was wet, swampy land, and was principally used in summer time. After it was turnpiked it was better, but two loaded hay teams could not well pass each other then in very wet weather, on account of which it was ordered widened in the spring of 1879. There never has been any objection to the use

of this as a road, to my knowledge. That in 1873 and 1874, he [Brockbank] repaired and turnpiked said road from the State road west, its full length to the Church farm; that he did this under the direction of the county court of Salt Lake county, which paid for these repairs. The total paid by the county for these repairs was $593."

Defendant also gave evidence tending to show that said street had been used as a public highway for over 30 years; that he was road supervisor of the district in which the lands were situated, and that the acts complained of were done in the line of his duty as such.

The following statement of the trial judge is contained in the statement on motion for a new trial: "Both the witnesses of the plaintiff and defendant testified that no portion of the platted street had ever been used by any person as a road, except a strip in the centre of the same about two rods wide; that there was a ditch on each side of this strip, and that the street runs east and west; and that the plaintiff had been in uninterrupted possession of the land lying up to and along the line of the south ditch for more than eight years continuously before the institution of this suit; that he had planted thereon fruit and shade trees and currant bushes, and used a considerable portion thereof as meadow land; that the same was embraced by the deed of Eddins, and the premises described in the complaint; and that the principal damage done to the plaintiff by the defendant, Guest, was caused by digging up a portion of said trees and bushes, and destroying a portion of said meadow land. As to the alleged destruction and possession of the strip between said ditches there was a conflict in the testimony. That the street as platted was four rods wide, and the alleged trespass was within the four rods."

The defendant requested the court to submit to the jury, as a question of fact to be determined by them, whether the land in question was or was not a highway; and by his sixth and seventh requests asked the court to charge the jury as follows:

"(6) You are further instructed that it is not necessary that a dedication be made by deed or other special form;

nor is any special form of acceptance of such dedication necessary to be made. It is solely a question of intent on the part of the person to dedicate, and on the part of the public to accept. If, therefore, you believe from the evidence that the road in controversy was used by the public as a road, with the knowledge of plaintiff or his grantor, or other persons claiming the property now claimed by plaintiff, without objection by such person so claiming the same, with intention to appropriate the same as a public road, and that Salt Lake county has expended money in repairs and improvements of the same, then you are instructed that this evidence may be received by you as tending to show a dedication to and acceptance by the public for road purposes.

"(7) If the jury believe from the evidence that the land described in the complaint has been dedicated to the public as a road, and that public use has been made of only a part of the same, then you are instructed that such use relates to the entire width of the road as originally laid out and dedicated. If, therefore, you find that the road in controversy was originally laid out and dedicated as four rods in width, and that there has been a public user only of three or less number of rods in width, you are instructed that such user of a part may be considered as evidence tending to show an acceptance of the whole as laid out and dedicated."

All of which were refused, and the jury instructed as follows:

"If the jury find from the evidence that that portion of the premises described in the plaintiff's complaint on which his trees and shrubbery stood, was never used as a road, and that the plaintiff was in possession of the same at and before the date of the alleged trespass, then the defendant, Guest, has not shown any facts in justification of his acts in digging up the trees and removing the ground which was so possessed by the plaintiff, and the plaintiff is entitled to recover whatever damages he has sustained by reason thereof. There is no evidence in this case tending to show any dedication, for the purpose of a road, of any portion of the premises described in the

complaint, except that portion between the two ditches on each side of the traveled street, and as to whether there has been a dedication of that portion as a public road is a question for the jury; but in any event, if the jury find in accordance with the first instruction, the plaintiff is entitled to the damages which he has sustained for the trespass committed by the defendant on the premises outside of the ground between said ditches."

The jury returned a verdict for the plaintiff, upon which judgment was entered, and, after motion for new trial, the case comes to this court on appeal by the defendant, alleging error in refusing to receive in evidence the plat and survey, and in refusing to give the instructions asked for.

This record presents to us the question as to what may be considered in determining the width and limits of a highway established by user. The trial judge, while submitting to the jury the fact as to whether a highway had been established over a part of the land, charged the jury that there was no evidence tending to establish a dedication of any part of said land, except a narrow strip through the centre thereof, upon the theory that the limits of a highway could not be shown to extend beyond the portion actually used and covered by the traveled track, and that the owner's continued possession and use of a strip along the south side thereof, as before stated, was conclusive evidence against its dedication for the use of the public as a highway. In this there was error. The question should have been submitted to the jury. When a highway is established by user merely over a tract of land of the usual width of a highway, or over a tract of land where, by a survey and plat which has been recognized and adopted by the owner, a street or highway of a certain width is laid out, the right of the public is not limited to the traveled part, but such user is evidence of a right in the public to use the whole tract as a highway, by widening the traveled part or otherwise, as the increased travel and the exigencies of the public may require: *Sprague* v. *Waile*, 17 Pick., 309; *Barclay* v. *Howell's Lessee*, 6 Pet., 498; *Hannum* v. *Belchertown*, 19 Pick., 311; *Irwin* v.

*Dixion,* 9 How., 10; *Bumpus* v. *Miller,* 4 Mich., 159; Ang. Highw., sec. 155.

In this case there was evidence showing that the public had been using portions of this street continually as a highway for over 30 years; that the public had from time to time improved, widened, and repaired the road at great expense, without objection from the plaintiff or his grantor; and the plaintiff received his title to the premises by a deed which not only expressly recognized this street, but recognized it as a street four rods wide, and including all the land in question. This was evidence which should at least have been submitted to the jury, tending to show that the dedication extended over the land in question. Its weight was for the jury, aided by proper instructions from the court: Ang. Highw. sections 142-149; *Gould* v. *Glass,* 19 Barb., 195; *Daniels* v. *People,* 21 Ill., 439; *Pettingill* v. *Porter,* 3 Allen, 349.

In determining the extent of the dedication, all the circumstances may be considered,—the width of the highways in the vicinity of the land in question, the width of highways in a system of which the one in controversy forms a part, any circumstances of recognition by the owner of the fee and the public of definite and fixed limits. It is but matter of common understanding and experience that it is desirable and usual that streets and highways should be and are of uniform width: and when a plat or survey of a tract of land is in existence showing uniform width of streets, and the public are entering upon and improving the streets persuant to the general plan of such survey, it is evidence, more or less strong, according to circumstances, against the owners of such lands who have knowledge thereof, and who have in any way recognized such plan and survey, when the public by user establish a highway on one of such platted streets, and commence to improve the same, that the dedication by such owners is of the extent as platted, and that it is a question of fact for the jury. The continued use of the lands by the plaintiff was not absolutely, as matter of law, inconsistant with the easement created by the right of way as a highway. The owner of the fee has the right to use land in any way not

inconsistent with the requirements of the public. Ang. Highw. Secs. 301-311. It was a circumstance which, with all the other facts, should have been submitted to the jury. *Barclay* v. *Howell's Lessee, supra.*

The question as to whether the land in question was a highway should have been submitted to the jury, and the defendant's requests to that effect should have been given. For this error, the judgment and decision should be reversed, and the cause remanded for a new trial, with costs to the appellant.

ZANE, C. J., and BOREMAN, J., concurred.