509 P.2d 352

**Max HUNSAKER et al., Plaintiffs and Appellants,**

**v.**

**The STATE of Utah, By and Through its Road Commission, and Pollard Incorporated, a Utah corporation, Defendants and Respondents.**

**No. 12854.**

Supreme Court of Utah.

April 9, 1973.

2. State v. Petersen, 110 Utah 413, 174 P.2d 843; State v. Richards, 3 Utah 2d 368, 284 P.2d 691.

Ronald C. Barker, Salt Lake City, for plaintiffs and appellants.

Vernon B. Romney, Atty. Gen., Leland D. Ford, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action to enjoin defendants from constructing a second lane for traffic on 3500 South in the vicinity of 5300 West in Salt Lake County and to quiet title to the disputed area against the claims of the State Road Commission. Upon trial before the court, a temporary restraining order was dissolved, and a judgment of no cause of action was rendered against plaintiffs; they appeal therefrom.

Plaintiffs are the fee title owners of a parcel of land upon which there is situated a building known as Hunsaker Market. The northern boundary of plaintiffs' land is the center line of 3500 South, which is also a section line. The disputed area, which is 16½ feet wide, is located immediately south of the asphalted traffic lane and north of plaintiffs' store. The State claims a two-rod easement for highway purposes over plaintiffs' land, while plaintiffs urge the easement is confined to one rod and the State must condemn the additional footage.

The record indicates that plaintiffs' building was constructed in the 1920's and that the disputed area was utilized by plaintiffs and their predecessors in interest. For many years there were pumps from which gasoline was distributed; they were removed in the 1950's; thereafter the area served as a parking lot for customers of the market. The evidence from the State indicated that it had installed and maintained a highway drain in the area and stacked snow removed from the highway, as well as permitting a sewer line.

The exact point in time at which 3500 South became a highway is unknown; however, the record indicates that there was a center line survey made in 1853. The road was first paved about 1915 and was 20 feet wide; in 1956 it was widened to 33 feet. The original patent to plaintiffs' predecessors was issued January 30, 1908, and provided that it was subject to any easement or right of way of the public to use such highways as may have been established according to law over the same or any part thereof.

. The trial court found that the fence lines in the vicinity enclose a roadway 66 feet in width, the fences being 33 feet from the center line on either side of the road, both to the east and west of plaintiffs' property. The trial court further found that the usual width of highways in the area was 66 feet; and that within the memory of the oldest witnesses, who testified, the fences had existed as now situated.

The trial court ruled that the State had a right of way for highway purposes, which was 33 feet in width across plaintiffs' property. The trial court concluded that the highway was in existence prior to the issuance of the patent in 1908; that the patent was issued subject to existing right of way for highway purposes; that the law at the time the patent was issued had established a minimum width of 66

feet for highways; therefore, the south 33 feet of the highway as it crossed over plaintiffs' land was, in fact, dedicated to public use.

On appeal, plaintiffs contend that there was no evidence that they or their predecessors in interest ever intended to dedicate and abandon to the use of the public the disputed strip; and, in fact, they retained and used the area for service station and parking lot purposes in connection with the business conducted on the premises.

There was evidence of the early origin of the highway which was a connecting route between Salt Lake City and Magna and points west. At one time the highway was designated as part of the Lincoln Highway.

Sec. 25–1–1117, Rev.Stat. of Utah, 1898, provided:

> The width of all public highways, except bridges, alleys, lanes, and trails, shall be at least sixty-six feet. . . . provided, that nothing in this title shall be so construed as to increase or diminish the width of either kind of highway already established or used as such.

Under the provisions of this statute, it should be presumed that a public highway is of the prescribed statutory width unless the contrary is proven.[1]

i. See 1 Elliott, Roads and Streets (4th Ed.), Sec. 430, p. 493; Meservey v. Guilliford, 14 Idaho 133, 93 P. 780 (1908).

Plaintiffs urge that the highway was established prior to this 1898 enactment, that it was less that the statutory width and came within the exception provided. They contend that the width of the highway was confined to the traveled path and to sustain their contention they cite their use of the disputed area.

In Burrows v. Guest,[2] this court declared erroneous an instruction to the jury that the owner's continued possession and use of a strip along the south side thereof was conclusive evidence against its dedication for the use of the public as a highway. This court stated that all the circumstances must be considered in determining the extent of a dedication, such as the width of the highways in the vicinity of the land in question, the width of highways in the system of which the one in controversy forms a part, and any circumstances of recognition by the owner of the fee and the public of fixed and definite limits. This court observed that the continued use of the land by the plaintiff was not, as a matter of law, inconsistent with the easement created by the right of way as a highway, since the owner of the fee has the right to use the land in any way that is not inconsistent with the requirements of the public.

In the instant action plaintiffs' use of the area for parking purposes was not inconsistent with the public use of the area for sidewalks, utility lines and poles, sewer and water lines, highway drainage facilities, and a shoulder adjacent to the traveled way. Furthermore, the evidence of the use of the disputed area from the 1920's onward by plaintiffs and their predecessors does not rebut the presumed statutory width of 66 feet for a highway which was in effect at the time of the issuance of the patent in 1908.

This court has reiterated that where the public has acquired the right to a public highway by user, they are not limited to such width as has been actually used. The use carries with it such use as is reasonably necessary for the public easement of travel.[3] In Meservey v. Guilliford[4] the court observed that a statute which establishes the width of a highway should be considered as a declaration of the width that is reasonably necessary for the convenience of the public generally.

Even without the statutory presumption as to the width of the highway, the evidence in the instant case concerning the location of fences and the usual width

2. 5 Utah 91, 98, 99, 12 P. 847 (1886).

3. Jeremy v. Bertagnole, 101 Utah 1, 116 P.2d 420 (1941); Whitesides v. Green, 13 Utah 341, 44 P. 1032 (1896).

4. Note 1, supra.

**326**

of the highway in the vicinity is sufficient to sustain the determination of the trial court. The judgment of the trial court is affirmed. No costs awarded.

· HENRIOD, ELLETT, CROCKETT and TUCKETT, JJ., concur.